UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFRED BARR,

    Plaintiff,

v.                                         CASE NO: 8:10-cv-430-T-23EAJ

DAVID GEE, et al.,

    Defendants.

_____/

## **O R D E R**

Proceeding pro se,[1] Alfred Barr ("the plaintiff") sues an array of private individuals, government employees, and government agencies for an array of alleged deprivations of the plaintiff's constitutional rights enforceable under 42 U.S.C. § 1983. Comprising 137 pages, the largely incomprehensible, first iteration of the complaint asserts claims for conspiracy and malicious prosecution resulting in Florida's pursuing criminal charges against the plaintiff. An April 23, 2010, order (Doc. 45) dismisses the complaint and allows the plaintiff leave to amend. The order states:

> The complaint may not exceed **thirty pages** and must contain only a short and plain statement of the facts, that is, a statement of the time and the place that each important event occurred, the participants in each event, and a description of each event on which the plaintiff relies to state each claim against each defendant. The complaint must contain allegations of fact in support of each claim against each defendant but need not contain legal argument or citation to cases or other authority. Failure to comply with this order will result in dismissal without further notice.

---

[1] A pleading drafted by a pro se party is interpreted under less stringent standards than a pleading drafted by an attorney. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "[e]ven in the case of pro se litigants . . . leniency does not give a court license to serve as de facto counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

The plaintiff amends the complaint (Doc. 50), but the amended complaint comprises thirty-four pages and fails to fix the pleading deficiencies identified in the April 23, 2010, order.  The plaintiff sues (1) Hillsborough County; (2) Charles Allen "in his personal capacity as Code Enforcement officer" for the Hillsborough County Code Enforcement Department' (3) Julianne Holt, a public defender for Florida's Thirteenth Judicial Circuit; (4) the State Attorney's Office for Florida's Thirteenth Judicial Circuit; (5) Mark Ober, the State Attorney for the Thirteenth Judicial Circuit; (6) Sean Keefe and Steve Udagawa, division chiefs for the State Attorney's office; (7) Linda Grable and Vanessa H. Hall, Assistant State Attorneys for the Thirteenth Judicial Circuit; (8) David Gee, the Sheriff of Hillsborough County; (8) Paul Fitts and Kristy Udagawa, two Hillsborough County Sheriff's deputies: (9) Craig Latimer, a "supervisor" for Child Protective Services of Hillsborough County; (10) MaryEllen Elia, the Superintendent of Schools for Hillsborough County, (11) Cathy Gatchell, a guidance counselor employed by the Hillsborough County School Board; (12) and Suzanne Boner, a teacher in the Hillsborough County school system.  The array of defendants submits six separate motions to dismiss (Docs. 51, 52, 53, 54, 55, and 56).  The plaintiff responds in opposition to each motion.

The responses (Docs. 65, 66, 67, 68, 69, 70), which range from thirty-six to forty-nine pages in length, violate Local Rule 3.01(b), which limits to twenty pages a response in opposition to a motion.  The plaintiff moves (Doc. 71) to "consolidate" his responses to the various motions to dismiss.  Although the plaintiff's motion to "consolidate" is unclear, the motion is construed as motion to file excess pages and the

motion (Doc. 71) is **GRANTED**. However, the plaintiff is cautioned that any future response must be limited to twenty pages and that any future motion must comply with Local Rule 3.01(g), which states:

> Before filing any motion in a civil case, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, . . . to dismiss for failure to state a claim upon which relief can be granted, or to involuntarily dismiss an action, the moving party shall confer with counsel for the opposing party in a good faith effort to resolve the issues raised by the motion, and shall file with the motion a statement (1) certifying that the moving counsel has conferred with opposing counsel and (2) stating whether counsel agree on the resolution of the motion.

Any future paper that fails to comply with the pertinent rules will be stricken and will not be considered by the court.

## Factual Background

Although comprising thirty-four pages, the amended complaint (Doc. 50) contains less than three pages of allegations of fact. The remainder of amended complaint contains improper legal conclusions and conclusory allegations of wrongdoing by the various defendants. Although difficult to decipher, the complaint apparently asserts wrongdoing during a state court criminal prosecution against the plaintiff. The complaint alleges that the Hillsborough County Sheriff's Office "set into motion a plan, using the State of Florida judicial system to effect, create and cover up criminal actions by the defendants." (Doc. 50 at 7) The complaint conclusorily alleges that various defendants (1) entered the plaintiff's residence without a warrant and without probable cause, (2) "unlawfully arrested the plaintiff," (3) "unlawfully searched the plaintiff's dwelling," (4) "introduced impermissible statutorily protected confidential reports alleging child abuse

into the public record," (5) detained and interrogated the plaintiff's child "for multiple days [and] coerced [the child] to implicate plaintiff in felony crimes as parent."

Although unclear, a section of the complaint entitled "motivation by racial or invidiously discriminatory practice, custom or policy 1985 claims" contains the complaint's only allegations of fact. The plaintiff alleges:

> By comparing the events of the complaint, there are two initial people; one Negro [presumably the plaintiff] and one Caucasian [whose identity remains unknown]. Both parties called 911, claiming battery by the other. Neither claimant had witnesses, nor did either person demonstrat[e] visible injury. The 911 operator dispatched HCSO. Upon arrival, HCSO selected to speak solely with the Caucasian caller. After this single conversation, HCSO Fitts arbitrarily decided to break into the residential property of the Negro party, and use excessive force. HCSO refuse[d] to take the complaint of the Negro party against the complaining Caucasian party. HCSO searched the Negro's residential home. After removing the Negro from the premises, HCSO Fitts returned hours later and removed the Negro party's minor child from a school bus without permission or authorization from the parent. Separately, HCSO came to the school of the Negro party's minor child, in concert with HCPS removed the minor child from his normal class and interrogated the child for hours under coercion trying to force the minor child to confess the Negro parent committed child abuse. HCSO and HCPS filed a child abuse report against the Negro parent. HCSO and SA disclosed child abuse allegations to a jury and judge in an attempt to convict the Negro party. The Caucasian control group and the Negro plaintiff are the same in all relevant legally sufficient respects. The Negro was prevented from exercising his constitutional rights. Where all other things were equal, the Caucasion controlling defendants as municipal and State constitutional officers, employees and state actors did not permit Negro equal protection or treatment. All the persons involved and in control of this matter, process, investigation and prosecution are all Caucasian.

The remainder of the complaint contains only conclusory allegations of wrongdoing, and neither a conclusory allegation nor "a legal conclusion couched as a factual allegation" supports the sufficiency of a complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels

- 4 -

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

## Discussion

### I. Claims Against Hillsborough County

In counts six and fifteen, the plaintiff asserts a 1983 claim against Hillsborough County. Count six asserts a claim against the county for "(vicarious) liability for unwarranted entry, malicious abuse of process, false arrest, and false imprisonment." (Doc. 50 at 14) The plaintiff alleges that the county was negligent "through its constitutional officers" and that the county's management "participated in employee evaluations, backgrounds demonstrating complaints from other outside persons that recently within all relevant times filed or attempted to file criminal complaints against Caucasian employees." In count fifteen, another "vicarious liability" claim against the county, the plaintiff alleges that "the defendant's multiple employees and agents in whole and or part participated in specific patterns and series of incidents that support the general allegation of a custom or policy."

Although permitted to sue a municipality under Section 1983, a plaintiff may not rely on the theory of *respondeat superior*. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"); see also McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003). To assert a Section 1983 claim against the county, the plaintiff must demonstrate the violation of a constitutional right caused by enforcement of a policy or custom of the

- 5 -

county.  McDowell, 392 F.3d at 1289 (citing City of Canton v. Harris, 489 U.S. 378 (1989)).

The complaint fails to identify a single policy or custom of the county.  The complaint fails to allege that a county ordinance caused the plaintiff's injury or that a county employee with final decision-making authority ordered (or even knew about) the conduct leading to the plaintiff's alleged injury.  Because the complaint identifies no policy or custom of the county, the county's motion (Doc. 51) to dismiss is **GRANTED**.  Counts six and fifteen of the amended complaint are **DISMISSED WITH PREJUDICE**.

## II. Claims Against Individual Officers

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known." Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007).  The official seeking qualified immunity must show that he "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).  If engaged in a "discretionary function," the official enjoys qualified immunity unless the plaintiff establishes that "(1) the defendant violated a constitutional right[] and (2) this right was clearly established at the time of the alleged violation." Holloman, 370 F.3d at 1264.  In the present case, the plaintiff complains of unlawful actions by various government officials acting within their discretion as government officials.  Accordingly, each officer enjoys qualified immunity unless the complaint alleges that the official violated a clearly established constitutional right of the plaintiff.

### A. Claims Against the Public Defender

In count fourteen, the plaintiff sues Julianne Holt, the public defender who represented the plaintiff at his criminal trial. The plaintiff alleges that Holt "neglected the direct obligation to protect the constitutional rights of her client, the plaintiff." (Doc. 50 at 23) The plaintiff alleges that Holt and her "staff" "participated in specific hearings, permitting the claims of the [state attorney] to go unchallenged by silence without objection or pleading." Finally, the plaintiff alleges that Holt "conspired with State officials to deny constitutional rights."

A defendant incurs liability under Section 1983 only if acting "under color of" state law. The plaintiff's claim fails because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981). Furthermore, the plaintiff's vague and conclusory allegations of conspiracy fail to support the claim against Holt. The plaintiff alleges no fact showing an agreement between Holt and another person to deprive the plaintiff of his rights. See, e.g., Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed."). Accordingly, Holt's motion (Doc. 53) to dismiss is **GRANTED**, and count fourteen of the amended complaint is **DISMISSED WITH PREJUDICE**.

### B. Claims Against the State Attorneys

In counts eight, nine, ten, eleven, twelve, thirteen, and fourteen, the plaintiff alleges Section 1983 claims against various members of State Attorney's Office for Florida's Thirteenth Judicial Circuit. Count eight alleges that Mark Ober:

> was aware of warrantless entry, excessive force by HCSO, and that HCSO contacted [the state attorney] for legal advice, prior to arresting plaintiff. Defendant knew or should have known in advance conflict with statutory mandates, where the State legislature identified specific situations "SA" office is disqualified and that failure to comply with this statute is a violation under the Code of Professional Responsibility, Fla. Disciplinary Rule.

The complaint generally alleges that Ober exercised "final authority on behalf of State of Florida" and that Ober "condoned acts and subscribed official policies or customs against plaintiff's rights." The complaint alleges Ober was "intentionally recklessly grossly negligent" as a supervisor and that Ober's "actions as a supervisor, investigator, and administrator conducting investigations and coordination of charges to prejudice the fairness of trial against the plaintiff for an unlawful purpose." (Doc. 50 at 21)

Count nine alleges that Keefe "as supervisor, administrator, and investigator failed to truthfully, or properly report the facts. Keefe's acts were intentional misconduct, recklessness, gross negligence supplying false material information to the judicial process for others to use." The plaintiff alleges that Keefe "participated in the planned cover up of violations against minor children."

Count ten alleges that Matthew Smith "collected, created false information concerning the plaintiff's minor child. [Smith] conspired with division chiefs Keefe, Udagawa, and PD to obstruct witness deposition and provide false misrepresentations

- 8 -

to the court, extrinsic fraud." The plaintiff alleges that Smith "had an opportunity to prevent violations against this plaintiff's rights." (Doc. 50 at 23)

Count eleven alleges that Linda Grable "conspired to fabricate false information, creating higher consideration of bail." Grable allegedly "had an opportunity to prevent violations." (Doc. 50 at 24)

Count twelve asserts that Steve Udagawa "did not participate in the judicial process or act as an advocate for the prosecution. The acts of Udagawa were as an administrative legal advisor." Udagawa "provided legal advice, assisted in the fabrication of false information, disregarding statutory conflicts. Udagawa offered legal advice to HCSO prior to their filing charges, prior to depositions and trial as acts outside the advocacy criteria."

Finally, count thirteen alleges that Vanessa Hall "did nothing to prevent harm or injury against the plaintiff." (Doc. 50 at 26)

At all times pertinent to the complaint, Ober, Keefe, Smith, Grable, Udagawa, and Hall were state prosecutors acting as an advocate for the state. A prosecutor enjoys absolute immunity for all actions performed within the scope of the prosecutor's role as government advocate. Imbler v. Pachtman, 424 U.S. 409 (1976). A prosecutor enjoys absolute immunity because "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler, 424 U.S. at 423. "The prosecutorial function includes the initiation and pursuit of criminal prosecution and most appearances before the court,

including examining witnesses and presenting evidence." Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004) (citations omitted).

The plaintiff's claims against the prosecutors fail. The complaint alleges that each of the prosecutors in the plaintiff's criminal case fabricated evidence and otherwise prejudiced the plaintiff's rights as a criminal defendant. The plaintiff complains of the prosecutors acts both in the courtroom and while deposing witnesses on behalf of the state. Furthermore, the plaintiff alleges (without any factual foundation) that the prosecutors conspired to fabricate evidence in the plaintiff's criminal trial. All of the alleged acts fall within the scope of the prosecutor's role as government advocate. The prosecutors enjoy absolute immunity from the plaintiff's claims. See Imbler, 424 U.S. at 423; Rivera v. Leal, 359 F.3d at 1354 ("prosecutorial actions that occur in court are shielded by absolute immunity, even where the prosecutor knowingly proffers perjured testimony or fabricated exhibits.").

To the extent the plaintiff challenges Ober's actions as a supervisor, the plaintiff's claim fails. "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). The complaint fails to allege that Ober participated in the violation of the plaintiff's constitutional rights, and the plaintiff fails to identify any a policy or custom of the state attorney's office that injured the plaintiff. The state attorneys' motion (Doc. 54) to dismiss is **GRANTED**, and counts eight, nine, ten, eleven, twelve, and thirteen are **DISMISSED WITH PREJUDICE**.

### C. Supervisory Claims MaryEllen Elia (the Superintendent of Schools for Hillsborough County), David Gee (the Sheriff of Hillsborough County), and Major Craig Latimer

In count sixteen, the complaint alleges that Elia, Gatchell, and Boner "failed [their] obligation to provide a safe environment for learning and equal application of education services to the plaintiff's minor child. Defendants conspired committed acts and subscribed to official policies or customs in violation of plaintiff's and minor child's rights." (Doc. 50 at 30) The complaint alleges:

> Defendants HCPS usurped the plaintiff's parental right to direct the care, control, and upbringing of his minor child and the legal authority to control his child's behavior and social life. Defendants by closed door interrogation tried to coerce minor child over several days to admit or confess criminal behavior by the plaintiff. Defendants knew in advance that an adolescent's cognitive ability is especially ill suited to the situation of interrogation, unlawfully removing this minor child from his normal daily routine and normal classmates to a separate area for custody and isolation. Caucasian defendants had direct and unilateral control over the freedom of the plaintiff's minor child. Defendants established an environment of terrorism for the plaintiff's minor child. Defendants engaged in a discriminatory practice with malice or reckless indifference to the federally protected rights of an aggrieved minor child.

(Doc. 50 at 31) The plaintiff alleges that "the interrogation of the minor child is an unlawful search" and that the defendants created "a racially hostile environment by oral, written, and physical interrogation, because of the plaintiff's race and to cover up criminal activity that is sufficiently severe, persistent, or pervasive." Although failing to assert which defendant committed each act, the complaint alleges that "Boner, and Gatchell, were influenced and supported by Elia, as the Superintendent of HCPS." (Doc. 50 at 32)

In count one, the complaint alleges that Gee "possessed and exercised final authority on behalf of [Hillsborough County] with respect to the arrest, detention,

- 11 -

charging, investigation, and prosecution of criminal felony offenses." The complaint alleges, without any factual basis, that Gee "conspired to use unlawfully processes[sic] to harm plaintiff's life, liberty, property, or ability to defend against criminal charges and disrupted parental rights." The complaint also states:

> [Gee] was negligent, knew in advance the background, custom and policies of specific employees, failing to properly supervise or train. [Gee] knew or should have known about certain racially motivated acts against the rights of the plaintiff and minor child. [Gee] received evidence of different racial treatment against the plaintiff and did nothing to correct or address behavior.
> . . . .
> [Gee] was negligent in review, investigation of the matter and the conduct of law enforcement, procedures, testimony, and conflict with laws, statutes, and the Constitution.

(Doc. 50 at 7-8) The complaint fails to allege any act by Gee.

In count four, the complaint alleges that Latimer "failed in his duty to comply with or was inadequate in his federal obligation" as a supervisor of Child Protective Services. (Doc. 50 at 13) In his position as a supervisor, Latimer allegedly "condoned improper actions by employees and others" and "condoned disclosure or distributed false child abuse reports or information" to the State Attorney. The complaint fails to allege that Latimer participated in the arrest or detention of the plaintiff.

The complaint fails to state a claim for supervisor liability against Elia, Gee, and Latimer.

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient

- 12 -

> to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 802 (11th Cir. 1998). Although a supervisor may incur liability for failing to supervise or train employees, a plaintiff may not rely on a single incident to allege a "policy" of inadequate training. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985).

The complaint alleges neither that Elia committed an unconstitutional act nor that Elia participated in the incident about which the plaintiff complains. The complaint fails to allege "widespread abuse" that would notify Elia of a continuing problem. In other words, the plaintiff seeks to hold Elia responsible for the allegedly tortious acts of her employees. Similarly, the complaint fails to allege that Gee or Latimer participated in the arrest or detention of the plaintiff. Although the plaintiff alleges that Gee and Latimer failed to train employees, the plaintiff alleges no incident (other than the plaintiff's arrest) that would notify Gee or Latimer of "flagrant, rampant," or "widespread abuse" by Hillsborough County sheriff's deputies. Identifying only an "isolated incident" insufficient to notify the supervisors of the alleged deprivation of constitutional rights, the plaintiff fails to state a claim. The plaintiff's supervisory claims against Elia, Gee, and Latimer are **DISMISSED WITH PREJUDICE**.

### D. The Remaining Claims

Finally, the plaintiff asserts claims against Charles Allen, Cathy Gatchell, Suzanne Boner, Paul Fitts, and Kristy Udagawa. The complaint is so devoid of factual allegations that the claims against the remaining defendants remain difficult to decipher. Allen apparently works as an officer for Hillsborough County Code Enforcement. The

complaint alleges that Allen entered the plaintiff's dwelling and "committed a violation of felony battery . . . by placing his hand upon the plaintiff." (Doc. 50 at 33) Furthermore, Allen allegedly "provided knowingly and wilfully false information to a law enforcement officer."

Although the facts remain unclear, Allen and the plaintiff both apparently called 911. Fitts and Kristy Udagawa, two Hillsborough County sheriff's deputies, apparently responded to the emergency calls. After arriving at the plaintiff's home, Fitts and Udagawa arrested the plaintiff. Although alleging that Fitts and Udagawa used excessive force and unlawfully entered the plaintiff's home, the plaintiff alleges neither how nor where the deputies effected the arrest. The complaint utterly fails to allege the facts and circumstances attending the arrest. After the arrest, the defendants Gatchell and Boner, who apparently work at the plaintiff's child's school, allegedly removed the plaintiff's child from class and "by closed door interrogation tried to coerce [the] child over several days to admit or confess criminal behavior by the plaintiff." (Doc. 50 at 30) The plaintiff's conclusory factual allegations fail to establish that any official violated the plaintiff's constitutional rights. Accordingly, the claims against the remaining defendants are **DISMISSED**.

### III. The Plaintiff's Motions to Disqualify Counsel

The plaintiff moves (Doc. 58) to disqualify Stephen Todd as counsel for Charles Allen and for Hillsborough County. Additionally, the plaintiff moves (Doc. 59) to disqualify Jason Gordillo as counsel for David Gee, Paul Fitts, Kristy Udagawa, and Craig Latimer. "A disqualification order 'is a harsh sanction, often working substantial hardship on the client; and should therefore 'be resorted to sparingly.'" Herrmann v.

Gutterguard, Inc., 199 F. App'x 745, 752 (11th Cir. 2006) (quoting Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982)).  For the reasons stated in Allen's response (Doc. 72) in opposition, the plaintiffs' motions for disqualification utterly fail to establish grounds to disqualify the defendants' counsel.  Accordingly, the motions (Doc. 58 and 59) are **DENIED**.  Asserting that the plaintiff's motions for disqualification are frivolous, the defendants Charles Allen and Hillsborough County move (Doc. 73) for sanctions under Rule 11, Federal Rules of Civil Procedure.  Pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b), the defendants' motion (Doc. 73) for sanctions is **REFERRED** to United States Magistrate Elizabeth A. Jenkins for a report and recommendation.

Conclusion

The motions (Doc. 51, 52, 53, 54, 55, and 56) to dismiss are **GRANTED**. Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the plaintiff's claims against David Gee (count one), Craig Latimer (count four), Hillsborough County (counts six and fifteen), Mark Ober (count eight), Sean Keefe (count nine), Matthew Smith (count ten), Linda Grable (count eleven), Steve Udagawa (count twelve), Vanessa Hall (count thirteen), Julianne Holt (count fourteen), and MaryEllen Elia (count sixteen) are **DISMISSED WITH PREJUDICE**.

Because the plaintiff proceeds pro se, the plaintiff enjoys some leniency in the interpretation of his complaint.  However, "[e]ven in the case of pro se litigants . . . leniency does not give a court license to serve as de facto counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action."  GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).  Even generously construed, the complaint fails to state a claim against any defendant.  Because the facts

and circumstances attending the plaintiff's remaining claims are so unclear (and because, with the addition of significant factual detail, the plaintiff might plead a claim against one or more defendants), the remaining claims are **DISMISSED** with leave to amend. On or before **Friday August 20, 2010**, the plaintiff may submit one more amended complaint. The amended complaint may not exceed **twenty-five pages** and may not re-assert any claim that this order dismisses with prejudice.

The amended complaint must contain only a short and plain statement of the facts, that is, a statement of the time and the place that each important event occurred, the participants in each event, and a description of each event on which the plaintiff relies to state each claim against each defendant. The complaint must contain allegations of fact in support of each claim against each defendant but need not contain legal argument or citation to cases or other authority. Finally, the amended complaint must allege more than mere conclusions. As stated in Aisenberg v. Hillsborough County Sheriff's Office, 325 F. Supp. 2d 1366, 1381-82 (M.D. Fla. 2004):

> A valid civil rights claim, especially when defended with immunity, requires more than conclusions. . . . "Conclusory" means "expressing a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary 284 (7th ed.1999). [The plaintiffs'] complaint includes a long list of accusatory, evocative allegations, leveling against the prosecutors sundry charges of malevolence and malignancy. However, as stated, neither the tartness of the allegation nor its determined repetition alters its character as a conclusion and transforms conclusion into fact. Stated simply, to allege a soldier is a "traitor" and "deserter" is a more conclusion; to allege that on a specified day at a specified place a member of the armed forces lawfully committed to combat by his superior officer during a declared war willfully and unjustifiably threw down his weapon in the course of battle and fled from the enemy in defiance of a direct, simultaneous, and lawful order and accosted his fellow soldiers in an attempt to injure or kill them and to materially assist the enemy-that alleges treason and desertion, a claim to which the word "traitor" or "deserter" is unnecessary.

Failure to comply with this order will result in dismissal of this action without further notice.

Finally, the plaintiff's motions (Doc. 58 and 59) for disqualification of counsel are **DENIED**.  Pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b), the defendants' motion (Doc. 73) for sanctions is **REFERRED** to United States Magistrate Elizabeth A. Jenkins for a report and recommendation.

ORDERED in Tampa, Florida, on July 28, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE